# Joynes *v.* Postal Telegraph Cable Company, Appellant.

*Telegraph companies—Negligence—Mistake in telegram—Contract.*
Where a dealer in one city quotes by telegraph a price for goods to a dealer in another city, and by mistake of the telegraph company, the price in the telegram received is less than that stated by the sender, and the receiver of the telegram orders goods at the lesser price, but the sender of the telegram delivers the goods, invoiced at the true price, the receiver may either decline to accept them, or take them at the invoice price. If he chooses the latter course, there is a new contract and the telegraph company is not liable to him for the difference in the price.

If in such a case the telegraph company is considered the agent of the sender, then the remedy of the receiver is not against the company, but against the sender for violation of the contract.

If it appears that the receiver could not have bought the goods at the lesser price, he has not lost his bargain, and consequently has no action against the telegraph company.

A party who selects the telegraph as a means of business communication must as between the sender and receiver bear the loss caused by the errors of the company.

Argued April 29, 1908.   Appeal, No. 212, April T., 1908, by defendant, from judgment of C. P. No. 3, Allegheny Co., May T., 1901, No. 396, on verdict for plaintiff in case of H. W. Joynes v. Postal Telegraph-Cable Company.   Before Rice, P. J., Porter, Henderson, Morrison, Orlady, Head and Beaver, JJ.   Reversed.

Trespass to recover for alleged negligence in the transmission of a telegram.   Before Kennedy, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $205.   Defendant appealed.

*Error assigned* was in refusing to enter judgment for defendant non obstante veredicto.

*W. S. Dalzell,* of *Dalzell, Fisher & Hawkins,* for appellant.

*L. K. Porter,* with him *S. G. Porter,* for appellee.

Opinion by Henderson, J., July 15, 1908:

The plaintiff's action proceeds upon the theory that he was bound by his telegram of May 11, 1900, for the price of $2.90 a barrel for the white potatoes ordered.   It will be observed, however, that his telegram was in reply to one of the same date addressed to the plaintiff by Kohlman Brothers, in which they solicited an order from the plaintiff.   In the latter telegram the price as named in the copy furnished to the plaintiff was $2.20 a barrel; whereas, the price stated in the dispatch as delivered to the defendant by Kohlman Brothers in New Orleans was $2.90 per barrel.   The plaintiff's order was based upon the price fixed in the telegram as he received it and whether the

telegraph company is to be considered the agent of the sender or of the receiver of the message the result is the same as to the plaintiff's right of action. If the defendant was the agent of Kohlman Brothers, the plaintiff was in no way chargeable with a mistake in the transmission of the message, nor with its consequences. If, on the other hand, it was the agent of the receiver of the message, the telegram as delivered would constitute the basis of a contract and the plaintiff was not bound for he did not contract at any other price than that named to him: Joyce on Electric Law, sec. 903 et seq. The plaintiff had notice the same day or on the morning of the day following that the mistake complained of had occurred. He was at liberty to refuse to receive the goods at the price charged by the consignor, but with a knowledge of that price he elected to accept. This amounted to a new contract with which the negligence of the defendant was not connected, and if the result of the venture was unprofitable to the plaintiff he cannot charge the defendant with his loss. Whatever damage he sustained by reason of the defendant's failure to correctly transmit the message up to the time that he elected to take the produce at the price fixed by the seller would be a basis for an action, for that loss would grow directly out of the wrong done by the defendant. But that is a different cause of action from that set up by the plaintiff, for the declaration and the evidence show that the plaintiff bases his action on the injury done him in naming a lower price for the merchandise than its actual price. It will be observed, too, that the dealer in New Orleans first invited the use of the telegraphic agency as a means of communication and thereby brought himself within a principle which is equitable and sustained by authority that the party who selects the telegraph for that purpose must, as between the sender and receiver, bear the loss caused by errors of the company: Ayer v. Western Union Telegraph Co., 79 Maine, 493; Durkee v. Vermont Cent. R. R. Co., 29 Vermont, 127; Saveland v. Green, 40 Wis. 431; Thompson on Electricity, sec. 483. In N. Y. & Wash. Printing Telegraph Co. v. Dryburg, 35 Pa. 298, it was held that the relation of principal and agent existed between the sender and the tele-

graph company. Whether the company might also be considered the agent of the receiver was not decided. It was adjudged, however, that a third party even might have an action for misfeasance by the company, the action not being founded upon contract but upon the negligent act of the company in altering the message, thereby causing a loss to the receiver. The same principle was announced in Western Union Telegraph Co. v. Richman, 19 W. N. C. 569. In each of the last two cases the action was by the receiver for loss sustained by the negligence of the telegraph company. In neither of them was it contended that a contract existed between the sender and the receiver of the changed telegram. No evidence was offered of any other damage than the difference between the prices in the telegram as received and as delivered to the company in New Orleans. For that difference the plaintiff was permitted to recover. But as Kohlman Brothers did not agree to sell at the lower price and the plaintiff did not agree in his telegram to pay the higher price, we find no basis for a conclusion that the defendant is liable for the damages claimed. The plaintiff was not offered the merchandise at $2.20 a barrel. So far as appears from the evidence he had no opportunity to buy it elsewhere at that price or at any price lower than the New Orleans dealers charged. He did not lose a bargain, therefore. There was no contract created by the telegrams which bound the plaintiff to pay $2.90 a barrel. If when advised of the facts he chose to take the goods at that price we must assume that the state of the local market justified him in so doing, and that his present complaint grows out of the fact disclosed by the evidence that a rapid decline in that market within a few days was the cause of his loss rather than the erroneous telegram. The first assignment of error is sustained.

The judgment is reversed.